# Philadelphia Library Company *versus* Beaumont.

*Valuation of Ground-Rent under Deed of James Logan, in trust for the Loganian Library.*

By a covenant in a ground-rent deed, executed in 1747, the rent reserved was to remain a rent-charge for one hundred and seven years, when a re-valuation of the land and improvements was to be made, and half of the increased value was to be added to the existing ground-rent, which was to be the rent for another period of one hundred and twenty-one years; and so on, under periodical valuations at intervals of one hundred and twenty-one years, for ever:

*Held*, that the mode of valuation contemplated by the covenant was, that half the interest of the valuation of the *fee* of the land and improvements should be added at each interval to the preceding rental, and not the estimated annual value of the premises, or what they would rent for by the year.

CERTIFICATE from Nisi Prius.

This was a proceeding in Equity by the Library Company of Philadelphia, in trust for the Loganian Library, against Andrew J. Beaumont and John A. Beaumont, and Elias Ely and Oliver Parry, trustees for Ruth Ann Ely, Margaret W. Ely, Richard Elias Ely, and Ruth Ely; and also trustees for the children of Elias Ely, the children of Benjamin Parry and Jane Parry his wife, and the children of Thomas and Hannah Paxson.

[Philadelphia Library Co. *v.* Beaumont.]

The bill set forth that by indenture made the 1st day of May, A. D. 1747, between James Logan of the one part and Jonathan Ingham of the other part, the said James Logan did grant and convey to the said Jonathan Ingham a certain tract of land in the township of Solesbury, and county of Bucks, in the then province of Pennsylvania, containing three hundred and ninety-six acres and one hundred and twenty perches; to have and to hold the same from and after the 1st day of March, in the year 1753–4, to the said Jonathan Ingham, his heirs and assigns for ever; yielding and paying therefor, yearly, to the said James Logan, his heirs and assigns, the yearly rent of twenty-one pounds sterling, on the 1st day of March in every year, for and during the full term of seven years; and from and after the expiration of the said seven years, for and during the full term of one hundred years then next ensuing, the yearly rent of twenty-five pounds sterling, on the 1st day of March, yearly, and after the expiration of the said last-mentioned term, that is to say, the term of one hundred and seven years from the time of the first entry upon the said land, which will be in the year of our Lord one thousand eight hundred and sixty, sixty-one, it was provided the said tract of land and plantation, with all the improvements thereon, should be valued by four judicious, impartial men, to be indifferently chosen by the heirs and assigns of the said James Logan, of the one part, and the executors, administrators, and assigns of the said Jonathan Ingham, of the other part; and by how much the true value of the said land and improvements should, in the estimation of the said four persons, exceed the rent therein reserved, one full half or moiety of such excess should be added to the said rent therein reserved, and from that time become a new rent, and should be yearly yielded and duly paid to the heirs or assigns of the said James Logan, by the executors, administrators, and assigns of the said Jonathan Ingham, on the 1st day of March, yearly, for ever; and in the like manner the like proceedings should be renewed at the expiration of every term of one hundred and twenty-one years for ever thereafter.

That by virtue of divers descents, assurances, and conveyances, the said tract of land with the improvements thereon, charged with the rent reserved as above mentioned, has become vested in the defendants, and the said rent has become vested in the Library Company of Philadelphia, in trust for the Loganian Library.

The plaintiffs averred that, according to the true intent and meaning of the said indenture, *the valuation which is to be made at the expiration of the said term of one hundred and seven years, and in like manner at the expiration of every term of one hundred and twenty-one years thereafter, by the four persons to be indifferently chosen by*

[Philadelphia Library Co. *v.* Beaumont.]

*the assigns of the said James Logan and Jonathan Ingham, is of the fair market value of the fee simple of the said tract of land with the improvements thereon, free from all encumbrances; and that one-half of the excess of the interest at six per cent. upon that valuation of the fee simple, over and above the said rent of twenty-five pounds, is to be added to that rent, and to become a new rent for the period of one hundred and twenty-one years, from the 1st day of March,* A. D. 1861.

That they are ready and willing to appoint, and have offered to the defendants to appoint two judicious impartial men on their part, to make such valuation of the fee simple of the said tract of land and improvements, or to join with the defendants in the appointment of four judicious impartial persons indifferently to make such valuation, and have requested and applied to the defendants to do the same, and they well hoped that the defendants would have complied with this their reasonable request.

But that the defendants, alleging that the valuation to be made, according to the true intent and meaning of the said indenture, is not of the fee simple, but is only of the net annual value of the said tract of land and improvements, and that a moiety of the excess of such net annual value, over and above the said rent of twenty-five pounds sterling, is to be added to it, decline and refuse to appoint two men to make such valuation of the fee simple as aforesaid, or to join with the plaintiffs in appointing four judicious and impartial persons indifferently to make such valuation, and decline to make any appointment, unless the persons to be appointed are to appraise only the net annual value of the said tract of land and improvements.

To the end, therefore, that the defendants may answer all and singular the premises; and that they may be decreed to appoint two judicious and impartial men to value the fee simple of the said tract of land and improvements, or to join with the plaintiffs in appointing four judicious and impartial persons indifferently to make such valuation; and that the plaintiffs may be decreed to be entitled to have added to the present rent of twenty-five pounds sterling, a moiety of the excess of the interest at six per cent., upon such valuation of the fee simple, over and above the said rent; and that the plaintiffs may have such other and further relief as the circumstances of the case may entitle them to, they prayed for a writ of *subpœna*, to be directed to the defendants, commanding them, at a certain time and under a certain pain therein limited, to be and appear to answer the premises, and to stand to, perform, and abide such order and decree, &c.

The answer of the respondents admitted the grant on the part of James Logan, and the title held by them as set forth in the bill; but denied that the true intent and meaning of the inden-

[Philadelphia Library Co. *v.* Beaumont.]

ture as to the valuation to be made at the expiration of every term of one hundred and seven years was as claimed by the complainants, and averred that *the valuation to be made by the four persons to be indifferently chosen as therein provided, is of the annual rent or value of the premises after deducting all proper charges, encumbrances, outgoings, and expenses, and that one-half of the excess of such newly valued and ascertained rent is to be added to the rent formerly reserved.*

Averring a willingness at any time to unite with complainants in the selection of persons for this purpose, and the refusal on the part of the complainants to do so, &c., and asking that the bill be dismissed with costs.

On hearing, the judge at Nisi Prius (WOODWARD, J.) made the following decree:—

" That, according to the true intent and meaning of the indenture of May 1st 1747, set forth in the pleadings, the valuation which it is therein provided shall be made at the expiration of the term of one hundred and seven years therein mentioned, and in like manner at the expiration of every term of one hundred and twenty-one years thereafter, by four persons, to be indifferently chosen by the assigns of James Logan and Jonathan Ingham, is of the fair market value of the fee simple of the tract of land conveyed by the said indenture with the improvements thereon free from all encumbrances, and not of the net annual value of the said tract of land and improvements; and that the plaintiffs are entitled to have one moiety of the excess of the interest at six per cent. upon the said valuation of the fee simple of the said tract of land, and improvements to be made as aforesaid, at the expiration of the said term of one hundred and seven years over and above the present rent of twenty-five pounds sterling, added to the said rent, to become a new rent for the period of one hundred and twenty-one years from the 1st day of March 1861. And it is further ordered, that the defendants do choose indifferently two judicious and impartial men on their part, to join with two such men to be chosen by the plaintiffs, to make such valuation as aforesaid of the fee simple of the said tract of land and improvements."

The defendants then had the case certified to the court in banc, where the above decree was assigned for error.

*M. Russell Thayer,* for the respondent, argued that the words " true value of the land," in the indenture, did not mean the gross value of the land or of the fee simple, because that would require the payment of a rent equal to more than one-half the fee simple; but that they meant the *annual* value of the land, and that the new rent is to be adjusted by ascertaining the annual value by proper testimony, at the expiration of the one hundred

and seven years, and adding to the old rent one-half of the excess of the new value over the old rent; that, as no method of calculating this annual value was fixed in the deed, and as farm lands seldom if ever yielded six per cent. upon their value, the referees were not bound to adopt this rate, especially as the parties a century ago could not have foreseen that this would be the legal rate of interest, or what money or lands would be worth in 1861.

If what is to be added, is the half of the excess of the annual value over the old rent, it follows that the thing to be added is not the fee simple, but the annual value of the lands.

It cannot be supposed that any rate of interest which the parties could prospectively fix upon the value of the fee, would express its true annual value as long as the world should stand. If they did, they might have said so; but as they were silent, why should any method of adjustment be interpolated into the contract?

The deed from the heirs and executors of Logan conveying the rent to the trustees of the Loganian Library Company, reserved his interest in the mines and ores, upon the property. If, then the method of valuation contended for the plaintiffs be correct, it would give them interest on a part of the property which does not belong to them. Again, as the annual value is diminished by the restriction which prevents the owners from clearing more than three-fourths of the land, why calculate six per cent. upon the one-fourth that cannot be improved?

The decision of the Supreme Court of New Jersey, in Farley v. Craig, 6 Halsted 263, upon another similar deed of James Logan, though not upon precisely the same point raised here, sustains our construction of the deed.

*P. McCall*, for the plaintiffs, argued that the appraisement must be of the land and improvements—the words being, "*the said tract of land and plantation, with all the improvements thereon, are to be valued,*" and again, "*and by how much the true value of the said land and improvements.*" The *true value* is the value of the land, &c., ascertained by the appraisers, at the successive periods named in the deed, as contradistinguished from the old value at the creation of the estate, or the antecedent appraisement.

That which is to be added to the present rent is a moiety of the excess of legal interest on the true value of land and improvements.

The rent reserved by this deed is a ground-rent, a rent reserved on a conveyance in fee: Farley v. Craig, 6 Halsted 263. The rent is the legal interest upon the price of the land where the purchase-money is not paid in cash. They have always been reserved in Pennsylvania with reference to the true value of the land, taking the legal interest as the measure of the rent. In this

case the rent is increased at successive periods by periodical valuations of the land and improvements.    This, from their language, was the intention of the parties.

If the *annual value* is to be estimated, that might be intentionally impaired at the close of each period, to the injury of Logan's assigns, while the *true value* would not be materially diminished.

The only duty of the appraisers is to value the land and improvements at a fair market value.    The amount of the new rent is fixed by the covenant of the parties.

If ores should be discovered, one-half only would be included in estimating the true value.

The appraisement ought to be the gross and not the nett annual value, if the court should decide that the estimate is to be of the annual value, because all charges must be considered as covered by the moiety of the excess over the present rent.

The opinion of the court was delivered, May 6th 1861, by

THOMPSON, J.—The plaintiffs below are the owners, by a devise from James Logan, in trust for the Loganian Library, of a ground-rent reserved by the testator in a tract of 396 acres and 120 perches of land, in Solesbury township, Bucks county, and the defendants claim title to the land subject to rent, under and by virtue of sundry conveyances and descents from Jonathan Ingham, the original grantee.

The original rent reserved in 1747 was £21 sterling, which, by a covenant in the deed of the land, was to remain a rent-charge for the period of one hundred and seven years, when a re-valuation of the land and improvements was to be made, and half the increased value added to the existing ground-rent, ·which was to be the rent for another period of one hundred and twenty-one years, and so on, under periodical valuations at intervals of one hundred and twenty-one years, for ever.

The difficulty here has arisen in a difference of opinion as to the mode of valuation to be adopted.    Is it to be according to the estimated *annual value* of the premises, or by a valuation of the fee of the land and improvements, half the interest of which to be added to the preceding rental?    The plaintiffs contend for the latter, and the defendants for the former.

The words in the deed in which the difficulty has arisen are as follows : at the end of the first period, which was to be in 1861, " the said tract of land and plantation, with all the improvements thereon, are to be valued by four judicious men, to be indifferently chosen by the heirs and assigns of the said James Logan, of the one part, and the executors, administrators, and assigns of the said Jonathan Ingham, of the other part, and by how much the *true value* of the said land and improvements shall, in the

[Philadelphia Library Co. v. Beaumont.]

estimation of the said four persons, exceed the rent herein reserved, one full half or moiety of such excess shall be added to said rent reserved, and from that time become a new rent," and be paid yearly to the heirs and assigns of the grantor for a further period of one hundred and twenty-one years, and so on for ever.

In construing this reservation we should bear in mind that the parties had in view the creation of a ground-rent unextinguishable, but subject, at long intervals, to be changed and increased by a re-valuation of the property out of which it was to issue. This the parties might legally do, although it is somewhat novel.

In conveying land on ground-rent, a valuation of the premises in some cases is necessary. This fixes what may be called the capital, and a rate of interest agreed upon ascertains the rent reserved. If extinguishable, the capital which would produce an interest equal to the rent, would be the sum necessary to be paid to extinguish the charge. This is the usual course of such transactions, and we have not a word to show that any different mode for ascertaining the rent was to be observed. If the words do not forbid it, then the construction will be that the usual mode was intended.

The deed of the grantees provides, "that the land and plantation, with all the improvements thereon, are to be valued," not at what they would rent for by the year. The words used have a greater scope than this, and there is nothing elsewhere discoverable which would qualify them. The suggestion that six per cent. is too high a rate for a farm, may be true or not, owing to many circumstances—it might be a high rent now, and a very low one fifty or a hundred years hence. This consideration is too vague to be allowed to alter the obvious import of the words used. Having valued the land and plantation, then the future rent is to be ascertained by *so much* as the *true value* of said land and improvements "shall exceed the rent reserved," by adding one "full half or moiety of each excess" to the existing rent. The valuation is to get at a capital, the interest of which is to be the rent reserved. It is not pretended that the half value of the premises is to be paid as rent every year. This would be absurd. But the fee was to be valued, to get at the sum that half of the interest would represent, which being added to the existing rent, was to be the future charge.

The words used, and the object intended, both look to this as the meaning of the parties. There are certainly no words limiting the valuation to what the premises would rent for per year, which would involve calculations for taxes and repairs, as contended for by the defendants. The consideration that six per cent. would be a high rent we have seen is not sufficient to require the interpretation contended for. On the other hand, in

3 Wr.—4

[Philadelphia Library Co. *v.* Beaumont.]

addition to the difficulty in estimating what the taxes might be and the repairs in the future, the process might result in great injustice, as has been well suggested by the plaintiff's counsel, by letting the farm and improvements so run down at the period for estimating the annual value as to be of little worth. Thus, although the fee might have greatly appreciated in the general property of the county, or advance of property in the neighbourhood, the rental might be very little, if any, advanced. Tested by the words used, and supported by the object of the parties, and the mode in which such matters are usually transacted, we think the decree at Nisi Prius was based on the true construction to be given to the deed.

I do not appreciate the difficulty suggested of the possible change of the rate of interest. It is the same now that it was one hundred and seven years ago, when the ground-rent was reserved, and we can predicate nothing of the possible contingency that the rate per centum may be changed. If it shall be so before 1982, the period of the next valuation, we may trust the courts of that day to discover the proper rate per cent. on the capital, necessary to constitute the rent by the law regulating the rate which existed at the making of the contract.

The decree at Nisi Prius affirmed at the costs of the appellants.